Argued November 25, affirmed December 15, 1975

In the Matter of the Dissolution of the Marriage of
BATTEN, *Appellant, and* BATTEN (No. 78223)
(CA 4935), *Respondent.*

543 P2d 33

*H. William Barlow,* Salem, argued the cause for appellant. With him on the brief were Allen, Stortz, Barlow & Fox, Salem.

*Sam F. Speerstra,* Salem, argued the cause for respondent. With him on the brief were Rhoten, Rhoten & Speerstra, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

The marriage of the parties, both licensed, practicing physicians, was dissolved in May 1973. The property settlement agreement and decree awarded the wife $250 a month per child for the support of two minor children. Subsequent to the dissolution the husband sought a modification of the support order. From the trial court's order reducing the support to $200 per month per child for a specified period, the husband appeals.

Since the decree the husband has remarried. His wife is employed full time, earning approximately $9,000 per year. The reason that he seeks the reduction, however, is that he has recently given up his full-time work as a physician fully qualified in the field of public health for the state of Oregon and entered into a three-year residency at the Oregon State Hospital which will lead to his becoming qualified as a psychiatrist.

His professional income, chiefly from wages, during the year prior to his entering the residency program was approximately $27,000. During the residency period it is reduced to $17,000, with a monthly take-home pay of $890.

Our Supreme Court in *Nelson v. Nelson*, 225 Or 257, 357 P2d 536, 89 ALR2d 1 (1960), considered at length a request for modification of child support made by a physician who had changed the nature and location of his practice with a consequent sharp decline in his income:

"Where the defendant husband, acting in bad faith, voluntarily worsens his financial position

the authorities leave no doubt that he cannot obtain a modification of a decree under which he is required to pay alimony or support money. [Citations omitted.] However, in the case at bar there is no evidence that defendant acted in bad faith in selling his Oregon City practice and accepting employment in California, and there is nothing in the record to show that the trial court's refusal to grant defendant's motion for modification was based upon defendant's bad faith. * * *

"One may in good faith make a change in occupation, fully aware that the change will reduce his ability to meet his financial obligations to his children. To find bad faith it would be necessary to show that defendant acted with a purpose of jeopardizing the interests of his children. The evidence firmly establishes that in deciding to accept the position in California defendant was not prompted by any such motive, but rather by the desire to enter into a type of medical practice which he preferred.

"We are brought then to the question presented on this appeal, i.e., whether a defendant who, in good faith, elects to embark on a new enterprise at a reduced income is entitled to have the trial court consider such a change in circumstances as a basis for modifying a decree for support money." 225 Or at 260-61.

In answering that question in the affirmative, the court said:

"* * * The judgment of what is fair must include a consideration not only of the child's economic circumstances, but of his father's as well. In the proper case it may be just to reduce the child's standard of living if that is necessary to alleviate his father's financial hardship. The fact that such financial hardship is brought about through the father's change in employment, even though made with knowledge that it will result in

a reduction of his financial resources, does not preclude the court from considering the change as a basis for a modification of the decree. The change must, of course, be made in good faith.

"\* \* \* \* \*

"We have spoken only of the financial prospects which lure a man to change his employment. There are other considerations which may be even more important to him in seeking a change. He may wish to turn to another occupation, even though it calls 'for a permanent reduction in his income, because it holds the prospect of a more satisfying life for him. He should be permitted to choose such a course of action with the expectancy that the law will reduce the amount of the support money called for by the decree if it is the conclusion of the court that his hardship outweighs the hardship which would be visited upon his children." 225 Or at 263-64.

Here respondent, Dr. Fae Batten, does. not contest that Dr. Peter Batten has undertaken the psychiatric residency in good faith. It is clear that the trial court since it reduced the support per child from $250 to $200 per month so concluded. There is no cross appeal.

■■ There remains, then, only the question of whether the reduction ordered should have been to the $100 per month figure requested by appellant or to a figure less than the $200 ordered. Here we think it not inappropriate in the light of his present wife's employment to consider the total family income available to meet the expenses of the husband's present family in determining how most equitably the burden of his own reduced income should be shared. The 1974 earnings of Diane Batten, appellant's wife, were $7,322. The adjusted gross income of Dr. Fae Batten in 1974 was $42,000; that of Dr. and Mrs. Peter Batten together was $25,750. Each took one of the children as a de-

pendent upon his tax return. Virtually all of the income of both families came from their own earnings. It is elementary that the obligation to support their children rests upon both their parents.

Here appellant father testified:

"* * * But it is true that we lived high, when I was in the home and they did get used to that. In arriving at this $100.00 a month, I was thinking that I didn't have—well, I was basing it you know very frankly on what my present wife and I are living on in terms of total costs. Secondly, I wasn't certain of what their total costs were right now. I presume they are higher, but I have no figures, I have no data to support that. In looking at my own, I feel that that might be a reasonable point, but it is sort of arbitrary from my standpoint that I selected that particular figure because it was based on what I think and without reviewing actually what is going into their present cost of living."

We note that in his testimony he frankly acknowledged his request was based "on what my present wife and I are living on in terms of total costs." We think it equally proper to consider their combined earned income in evaluating what he should contribute for the children.

■ Despite respondent wife's present substantially higher earned income, largely a result of appellant's voluntary but necessary reduction, we conclude from our examination of the record that the order of the trial court reducing appellant's support obligation to $200 per month per child beginning July 1, 1975, and continuing "until January 1, 1977, when it shall revert back to $250.00 per month" was correct.

Affirmed. Costs to neither party.