Argued and submitted March 13, award of attorney fees vacated; otherwise affirmed October 21, respondent's motion for reconsideration filed November 20, 1992, allowed by opinion February 3, 1993

See 118 Or App 89 (1993)

In the Matter of the Marriage of

Karen Jo HOGUE,
*Respondent,*

*and*

James S. HOGUE,
*Appellant.*

STATE ex rel Karen Jo HOGUE,
*Respondent,*

*v.*

James S. HOGUE,
*Appellant.*

(C88-0813-ST; CA A71349)

839 P2d 760

Steven K. Chappell, Bend, argued the cause for appellant. With him on the brief was Hendrix & Chappell, Bend.

Gary E. Rueppell, Portland, argued the cause for respondent. With him on the brief was Hampson, Bayless, Murphy & Stiner, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Father appeals from the trial court's orders denying his motion to decrease his monthly child support obligation, holding him in contempt for failing to comply with the terms of the dissolution judgment and awarding attorney fees to mother. On *de novo* review, ORS 19.125(3), we vacate the award of attorney fees and otherwise affirm.

Father's support obligation for the parties' only child, Lucas, is $400 per month.[1] The judgment requires him to maintain life insurance on himself. At the time of trial, he carried no life insurance. He also had voluntarily moved from California to Bend to change his career. In California, he had sold motor homes for Beaver Coaches, in which his father has a 50 percent ownership interest. His monthly income, which varied because he was paid by commission, was then $3,583. In Bend, he is a self-employed construction worker, earning, at most, $1,100 per month. He hopes that his income will increase as his work becomes better known in the community. His present wife receives unemployment insurance. He and his wife also own a boat, a camper, two cars and real property worth $25,000 to $30,000[2] and rent a three-bedroom home. He recently bought her a $2,000 wedding ring.

Mother earns $2,300 per month. Her new husband has an income of $2,225 per month and pays $700 per month for his own children's support. Father claimed that, when he moved to Bend, mother agreed that he would pay only $300 per month for Lucas' support and that the other $100 per month would be carried as a debt, which father would repay when he was in better financial condition. Nevertheless, father's payments were sporadic. Most of the money that mother received came from garnishing father's wages. At the time of trial, he owed $5,108.20 in child support.

On April 30, 1991, father moved for a reduction in his child support obligation to $295 per month. Mother then sought to hold father in contempt for violating the judgment

---

[1] The original dissolution judgment set child support at $150 per month. On January 27, 1989, the trial court modified the judgment to increase it to $400 per month.

[2] The property is owned outright, although father owes $690 in taxes on it.

by failing to pay child support and to maintain life insurance. She also requested that father pay her attorney fees. The trial court denied father's motion, held him in contempt and ordered him to pay the child support arrearage and mother's attorney fees.

■ The court properly ruled that father's child support obligation should remain at $400 per month. ORS 107.135(2)(a) permits the trial court to modify child support when a party has undergone a "substantial change in economic circumstances." Father has the burden of proving a change of circumstances. *Jones and Jones*, 106 Or App 264, 267, 806 P2d 1170 (1991). ORS 107.135(3)(b) provides, in part:

> "[T]he court shall not find a change in circumstances sufficient for reconsideration of support provisions, if the motion is based upon a * * * voluntary reduction of income or self-imposed curtailment of earning capacity, if it is shown that such action of the obligor was not taken in good faith but was for the primary purpose of avoiding the support obligation."

■ No evidence suggests that, by changing jobs and moving to Bend, father acted in bad faith or primarily sought to avoid his support obligation. However, even when an obligor acts in good faith, child support will not necessarily be modified. We evaluate the "particulars of his changed circumstances, considering all the relevant factors," as well as Lucas' welfare. *Jones and Jones, supra,* 106 Or App at 268.

Although father testified that he was quite poor, he did not submit a tax return, pay stubs or a check register and, as the court found, appeared evasive when questioned about his income. Father's earnings have been reduced. However, his lifestyle belies his purported inability to pay for Lucas' support. Under these circumstances, father did not establish that his ability to pay has changed.

■ The court also correctly held father in contempt for failing to pay child support and maintain life insurance. *Former* ORS 33.020(1) (*repealed by* Or Laws 1991, ch 724, § 32). The standard for review is whether there is substantial evidence that father acted wilfully and with bad intent. *See State v. Mauro,* 92 Or App 194, 198, 757 P2d 454, *rev den* 307 Or 101 (1988). The court did find that he acted wilfully, and

"a finding of wilful disobedience of a valid court order *is* a finding that the contemnor acted with bad intent." *Couey and Couey*, 312 Or 302, 306, 821 P2d 1086 (1991). (Emphasis in original.) Father's economic circumstances should not prevent him from paying child support. The court correctly held him in contempt and entered judgment against him for the arrearage.

Father also committed contempt by failing to maintain life insurance. The dissolution judgment required him to name Lucas as the beneficiary of a policy on father's life. Father argues that he was not specifically aware of the obligation, but he signed the custody and property agreement containing that provision. There was no evidence that he could not afford the premiums. The court correctly held father in contempt.

■ Finally, father asserts that the court erred when it ordered him to pay mother's attorney fees. ORCP 68C(2) requires the party requesting attorney fees "to allege the facts, statute, or rule which provides a basis for the award in a pleading filed by that party." Mother did not do so. Attorney fees may not be awarded if the moving party has not complied with ORCP 68C(2). *Moreau and Moreau*, 87 Or App 202, 203, 741 P2d 932 (1987).

Award of attorney fees vacated; otherwise affirmed. No costs to either party.